UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HENDERSON FORD | CIVIL ACTION |
| VERSUS | NO. 17-10175 |
| NEW ORLEANS REGIONAL TRANSIT AUTHORITY | SECTION A(2) |

**ORDER AND REASONS**

Before the Court is a **Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6) (Rec. Doc. 9)** filed by Defendant New Orleans Regional Transit Authority. Plaintiff Henderson Ford opposes the motion. (Rec. Doc. 10). The motion, set for submission on December 13, 2017, is before the Court on the briefs without oral argument. Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that the Defendant's motion should be **DENIED** for the reasons set forth below.

**I.    Background**

Plaintiff Henderson Ford filed this action *pro se* alleging that Defendant New Orleans Regional Transit Authority (the "Transit Authority") violated the Americans with Disabilities Act, the Rehabilitation Act, and the Louisiana Civil Rights Act for Persons with Disabilities. (Rec. Doc. 1, p. 1). Ford asserts these claims under federal and state law seeking to recover any relief available including compensatory damages in the form of $50,000.00 for mental anguish, $50,000.00 for violating his civil rights under the ADA, $50,000.00 for violating his civil rights under the Louisiana Civil Rights Act for Persons with Disabilities, past and future medical expenses, court costs, and attorney's fees. *Id.* at pp. 6–7.

The following factual allegations, accepted as true, are taken from Plaintiff's Complaint. (Rec. Doc. 1).[1] Ford is a handicapped person. His right leg has been amputated six inches below his knee. This disability requires Ford to use a wheelchair to get around. Ford uses public transportation—notably, buses and streetcars operated by the Transit Authority—to travel around New Orleans. On September 9, 2017, Ford took the St. Claude bus to the Med-Pro Pharmacy on St. Claude Avenue to get his medication. After boarding the bus, the driver failed to properly secure the bus's safety harnesses to Ford's wheelchair. While the bus was moving, the wheelchair started "going up." Ford was forced to hold onto the bus seat and apply pressure so that the wheelchair would stay grounded. A block before arriving at his destination, Ford's head almost hit the top of the bus. However, two passengers caught Ford before his head could hit the bus ceiling.

Thereafter, Ford told the bus driver that he would like to make a complaint. The driver got annoyed, but she called her supervisor. Two supervisors arrived on the scene and Ford explained what happened. The two passengers and bus driver also gave their account of the incident. Thereafter, Ford and one of the supervisors "had a few words." The supervisor told Ford to get off the bus. Ford then told the supervisor to check the camera, and asked the supervisor to call the police and ambulance. However, the supervisor told Ford there was no bleeding and that neither the police nor the ambulance would be called. Ford felt dizzy and ultimately called an ambulance, which took him to the hospital. Upon seeing a doctor, Ford was told his treatment should include observation at home and pain medication such as Tylenol, Ibuprofen, or Advil.

Ford contends that before and after this incident, he feared getting hurt on the buses and streetcars because drivers failed to properly strap his wheelchair into a safe position. Ford also

---

[1] Plaintiff's Complaint is handwritten. While some of Plaintiff's handwriting is vague and difficult to read, the Court is convinced that its interpretation of Plaintiff's handwriting is accurate and any interpretation errors are harmless.

alleges that the drivers are going too fast and passing up the areas designated as bus stops. By passing the bus stop areas, the buses will sometimes have to park in the street. This causes the buses to stop at a very steep angle, which forces Ford to have to ask fellow passengers or strangers to help him onto the bus because some of the drivers will not help.

Ford also contends that on Saturday, September 23, 2017 at about 8:30 a.m., he caught the Elysian Fields bus. On that bus, the driver took an overhead safety strap and strapped it to Ford's waist strap. This was the first time any bus driver used the overhead safety strap and Ford did not know the buses were equipped with such a strap until that date. Ford then provides a list of buses he uses every month and alleges to have pictures with the safety straps used to secure him while riding these buses.[2]

Ford filed the instant Complaint *pro se* and *in forma pauperis* on October 5, 2017. No trial date is set at this time. Via the instant motion, the Transit Authority seeks to dismiss Ford's Complaint in its entirety pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) and 12(b)(6). The parties' respective arguments are discussed below.

**II.     Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) provides the vehicle by which a party can challenge a court's subject matter jurisdiction to hear a particular issue. In general, where subject matter jurisdiction is being challenged under Rule 12(b)(1), the trial court is free to weigh the evidence and resolve factual disputes to satisfy itself that it has power to hear the case. *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) (citing *Land v. Dollar*, 330 U.S. 731 (1947)). No presumptive truthfulness attaches to the plaintiff's allegations and the court can decide disputed

---

[2] Plaintiff provides the following list of buses and streetcars, which he claims have failed to properly use their safety harnesses: (1) Franklin, (2) Desire-Louisa, (3) St. Claude, (4) St. Bernard, (5) Canal Streetcar, (6) Magazine, (7) Tulane, (8) Galvez, (9) N. Broad, (10) Lake Forest Express, (11) St. Claude Streetcar, (12) Esplanade, (13) Tchoupitoulas.

issues of material fact in order to determine whether or not it has jurisdiction to hear the case. *Id.* However, where issues of fact are central both to subject matter jurisdiction and the claim on the merits, the trial court must assume jurisdiction and proceed to the merits of plaintiff's case under either Rule 12(b)(6) or Rule 56. *Id.* (citing *Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981)).

Under well-settled standards governing Rule 12(b)(6) motions to dismiss, a claim may not be dismissed unless it appears certain that the plaintiff cannot prove any set of facts that would entitle him to legal relief. *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 251 (5th Cir. 2006) (citing *Benton v. United States*, 960 F.2d 19 (5th Cir. 1992)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. US Unwired, Inc.,* 565 F.3d 228, 239 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculation level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

Finally, courts construe briefs submitted by *pro se* litigants liberally, and a court will "apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel." *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) (per curiam); *see also Abdul–Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*, 706 F.2d 638, 640 n. 1 (5th Cir. 1983). This does not mean, however, that a court "will invent, out of whole cloth, novel arguments on behalf of a *pro se* plaintiff in the absence of meaningful, albeit imperfect, briefing." *Jones v. Alfred*, 353 Fed.App'x 949, 951–52 (5th Cir. 2009).

### III. Law and Analysis

Plaintiff brings claims seeking damages under Title II of the ADA and the Rehabilitation Act. "The Rehabilitation Act and the ADA both prohibit discrimination against qualified individuals with disabilities; they employ many of the same legal standards and offer the same remedies." *Sweeney v. Texas State Univ.*, No. 14-910, 2016 WL 3829552, at *2 (W.D. Tex. 2016) (citing *Maples v. Univ. of Texas Med. Branch at Galveston*, 901 F.Supp.2d 874, 878 (S.D. Tex. 2012), *aff'd*, 524 Fed.App'x 93 (5th Cir. 2013)); *see also Miraglia v. Bd. of Supervisors of Louisiana State Museum*, No. 15-4947, 2016 WL 6215976, at *1 n. 1 (E.D. La. 2016) (citing *Frame v. City of Arlington*, 657 F.3d 215, 223–24 (5th Cir. 2011)) ("The ADA and § 504 of the Rehabilitation Act (29 U.S.C. § 794(a)) are generally interpreted *in para materia* and employ the same legal standards. . . . Plaintiff's briefing is limited to Title II which is not problematic under Fifth Circuit precedent. . . .").

Title II of the ADA prohibits disability discrimination in the provision of public services. *See Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011). Specifically, 42 U.S.C. § 12132 states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public

entity, or be subjected to discrimination by any such entity." To establish a claim under the ADA, Plaintiff must demonstrate (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of services, programs, or activities for which the public entity is responsible; and (3) that such exclusion, denial of benefits, or discrimination is by reason of disability. *Melton v. DART*, 391 F.3d 669, 671–72 (5th Cir. 2004) (citing *Lightbourn v. County of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997)).

In the instant matter, the Court finds that Plaintiff has sufficiently pleaded the first element of a § 12132 ADA claim—i.e., that he is a qualified individual within the meaning of the ADA. According to 42 U.S.C. § 12102(1)(A), an individual is disabled under the ADA where "a physical or mental impairment . . . substantially limits one or more major life activities of such individual." *Falls v. Bd. of Commissioners of New Orleans Reg'l Transit Auth.*, 16-2499, 2017 WL 2730781, at *3 (E.D. La. 2017). § 12102 provides the following non-exclusive list of activities considered "major life activities": caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. §12102(2)(A).

Plaintiff alleges that he is "a handicapped person with his right leg cutoff six (6) inches below his knee" forcing him to "use a wheelchair to get around and [ride] buses." (Rec. Doc. 1, p. 2). Under the ADA's plain meaning of disability, Plaintiff clearly suffers from a physical impairment that substantially limits one or more of the major life activities listed above. Given his physical limitations as a result of being an amputee, the Court finds that Plaintiff is substantially limited in major life activities as contemplated by 42 U.S.C. § 12102. *See Falls*, at *3. Therefore, Plaintiff has sufficiently pleaded the first element of an ADA violation, and the Court now assesses the second.

The second element of an ADA claim requires Plaintiff to sufficiently plead that he is being "excluded from participation in, or being denied benefits of services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity. . . ." *DART*, 391 F.3d at 671–72. Plaintiff has not alleged that he has been entirely cut-off from use of Defendant's transit services. It is clear from his Complaint that Plaintiff still has access to the transit system. However, Plaintiff is alleging that he is being limited in his access to the transit system because the Transit Authority bus drivers park at steep angles when picking up Plaintiff and continuously fail to properly use the bus safety harnesses when securing Plaintiff.

The Supreme Court has recognized a "meaningful access" standard that is applicable when courts are required to evaluate ADA claims in which the ADA plaintiff is not denied full access to a service, but rather is denied meaningful access. *DART*, 391 F.3d at 672 (stating, "Supreme Court precedent suggests that denial of 'meaningful access' is equivalent to a full denial of access under the ADA."). Giving Plaintiff a broad interpretation of his Complaint, the Court finds that Plaintiff has sufficiently pleaded that he was denied "meaningful access" to Defendant's bus system. Plaintiff provides with detail the buses which he rides that fail to properly use safety harnesses. (Rec. Doc. 1, p. 6); *see also* note 2, at 3.

Moreover, Plaintiff alleges that on September 23, 2017, the bus driver for the Elysian Fields bus used an overhead safety strap to secure Plaintiff. *Id.* at p. 5. Plaintiff alleges this was the first time a bus driver used an overhead strap to secure Plaintiff. *Id.* Moreover, Plaintiff alleges that bus drivers often park at steep angles when picking up passengers requiring Plaintiff to ask passengers and strangers for assistance when getting onto the bus. *Id.* Taking these facts as true, Plaintiff's allegations show that he was denied meaningful access to Defendant's buses. Therefore, the Court finds that Plaintiff has sufficiently pleaded the second element of his ADA claim.

The Court now turns to the third element, which requires Plaintiff to demonstrate discrimination by Defendant on the basis of Plaintiff's disability. *DART*, 391 F.3d at 671–72. In facts closely analogous to those currently before the Court, the Magistrate determined whether wheelchair-dependent plaintiffs sufficiently demonstrated that they were qualified individuals that were either denied benefits of public services or otherwise discriminated against by reason of their disability. *See Falls*, at *2 (citing *DART*, 391 F.3d at 671–72).

The *Falls* plaintiffs brought suit against the New Orleans Regional Transit Authority arguing that nearly all city bus stops were non-compliant with ADA requirements. The parties stipulated to a Settlement Agreement in order to bring the bus stops into compliance with ADA standards. However, the court was required to determine whether the Transit Authority violated Title II of the ADA for the purpose of determining damages and attorney's fees. Judge Roby found that the plaintiffs were denied access and discriminated against by reasons of their disabilities when plaintiffs presented,

> sufficient anecdotal evidence of difficulties accessing the bus stops—and the bus system as a result—given the non-compliance and inaccessibility including: having to make risky maneuvers and risking flipping over; having to avoid certain non-compliant bus stops; getting stuck because a lack of concrete at certain stops; and having to miss certain buses because certain bus drivers did not want to be liable for having [plaintiff] Tatum enter the bus on the street.

*Falls*, at *4.

Analyzing these facts in light of the third element, Judge Roby found that the acts of discrimination detailed above—the denial of safe use of bus stops or the denial of accessible bus stops—were caused solely by the fact that the plaintiffs were disabled. *Id.* at *5. Additionally, Judge Roby concluded that the problems the plaintiffs encountered using the bus stops "held their origin in the fact that they were confined to wheelchairs while attempting to use the bus stops." *Id.*

In the instant case, the Court has no difficulty making an inference from Plaintiff's allegations that he is being discriminated against by reason of his disability. This Court finds that Plaintiff has sufficiently pleaded that he was denied safe use of the bus stops and the buses themselves due to the improper use of safety harnesses. Moreover, Plaintiff has alleged that he is sometimes denied accessibility to bus stops because of occasional inadequate parking by the bus drivers. Therefore, the Court finds that Plaintiff's Complaint satisfies the applicable pleading requirements for an ADA violation.

## IV. Conclusion

The Court notes that Plaintiff's Complaint seeks compensatory damages. However, "[a] plaintiff asserting a private cause of action for violations of the ADA or the [Rehabilitation Act] may only recover compensatory damages upon a showing of intentional discrimination." *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002). Defendant's instant motion seeks to dismiss Plaintiff's cause of action in its entirety, rather than only seeking to dismiss Plaintiff's claims for compensatory damages. Thus, the issue of whether Plaintiff sufficiently pleaded intentional discrimination is outside the scope of this motion.

Nonetheless, giving Plaintiff a liberal and broad reading of his *pro se* Complaint, the Court finds that Plaintiff has sufficiently pleaded a cause of action under the ADA and Rehabilitation Act. Therefore, for the reasons set forth above, Defendant's Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6) is denied.

Accordingly;

IT IS ORDERED that Defendant's **Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6) (Rec. Doc. 9)** is **DENIED.**

January 23, 2018

                                                           JUDGE JAY C. ZAINEY
                                                           UNITED STATES DISTRICT JUDGE